```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
Hernan J. Santiago,

                Plaintiff,                    09-CV-0717

          v.                                  **DECISION**
                                              **and ORDER**
Michael J. Astrue,
Commissioner of Social Security

                Defendant.
_____
```

## Introduction

Plaintiff Hernan J. Santiago ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("the Act").

Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)") on the grounds that the decision of the Administrative Law Judge, Lamar W. Davis ("ALJ"), was supported by substantial evidence in the record. Plaintiff opposes Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) arguing that the ALJ's decision was not based on substantial evidence and was contrary to the applicable legal standards.

For the reasons set forth herein, I find that the decision of the Commissioner is supported by substantial evidence in the

record. Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's Complaint is dismissed with prejudice.

## Background

On January 11, 2006, Plaintiff filed an application for SSI, alleging disability starting on October 1, 2005, due to anxiety, panic attacks, depression, ulcers, asthma, high blood pressure and face and leg injuries. (Tr. at 14, 79).[1] The Commissioner initially denied Plaintiff's claims. Thereafter, Plaintiff filed a written request for a hearing before an ALJ, which was held on April 18, 2008, in Buffalo, NY.

In a decision dated June 25, 2008, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act since January 11, 2006. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. On August 14, 2009, Plaintiff filed this action.

## Discussion

**1. Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to review claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The section directs the district court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

---

[1] "Tr." refers to the administrative transcript.

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) therefore limits this Court's review to two main inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003).

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c). Section 405(g) states that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2009). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are not in dispute and where judgment on the merits is possible given the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

After reviewing the entire record, this Court finds that the ALJ's decision is supported by substantial evidence and is in accordance with the applicable legal standards. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's motion is denied.

**II. Standard for Entitlement to Benefits**

A disability, under the Social Security Act, is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c (a)(3)(A) (concerning SSI payments). Someone is considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c (a)(3)(B).

"Substantial gainful work" is "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A) and 1382c (a)(3)(B). Work can be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if workplace responsibilities are decreased from previous employment. 20 C.F.R. §§ 404.1572(a) and 416.972(a). Work can be considered "gainful" if

it is the kind of work that is usually done for profit. 20 C.F.R. §§ 404.1572(b) and 416.972(b).

In determining whether or not an individual is disabled, the Social Security Administration requires the ALJ to engage in the following five-step evaluation:

> (1) if the claimant is performing substantial gainful work, he is not disabled;
>
> (2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;
>
> (3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;
>
> (4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is disabled;
>
> (5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 419.920(a)(4)(i)-(v) (2009).

The ALJ determined that (i) Plaintiff had not engaged in substantial gainful activity since January 11, 2006, the application date, (ii) the Plaintiff's impairments, high blood pressure, depression, and status post gun shot wound, were "severe"

under 20 C.F.R. § 404.1520(c), (iii) the Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (iv) the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except standing, kneeling, crouching, crawling, balancing and climbing, which are limited to 1/6 of an eight-hour workday, with additional restrictions on unprotected heights and dangerous machinery, environmental restrictions against temperatures less than 40 degrees and more than 90 degrees, restrictions on 90% exposure to fumes, dust and airborne particles, and including a 1/6 of an eight-hour day limitation on independent judgment, discretion, and change in work process, with no interaction with the general public, and (v) Plaintiff has no past relevant work, and considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed.

**III. The ALJ's decision to deny Plaintiff benefits is supported by substantial evidence in the record and contains the applicable legal standards.**

A. *The ALJ provided adequate support for his finding that Plaintiff had the RFC for light work, with additional limitations.*

At step three of the evaluation, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulation No. 4. In so doing, the ALJ assessed the

6

severity of Plaintiff's mental impairments using the four criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00.C, Paragraph B: activities of daily living, social functioning, concentration or pace and episodes of decompensation. (Tr. 16-17). To satisfy the Paragraph B criteria, the impairment must result in marked restriction of two of the four categories. In the Psychiatric Review Technique form dated April 20, 2006, the State Agency Review Physician determined that Plaintiff had mild restriction in activities of daily living, mild difficulties with regard to concentration or pace, no episodes of decompensation, and marked difficulties in social functioning. (Tr. at 188). Since Plaintiff only had marked difficulties in one category, the Paragraph B criteria were not satisfied. Additionally, the ALJ determined that the evidence failed to establish sufficient Paragraph C criteria to find Plaintiff disabled. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00.F; SSR 96-8p.

In the fourth step, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with a number of restrictions. Plaintiff is limited to standing, kneeling, crouching, crawling, balancing, and climbing for 1/6 of an eight-hour workday. Plaintiff is unable to be around unprotected heights and dangerous machinery. Plaintiff has environmental restrictions including temperatures less than 40 degrees and more than 90 degrees. Plaintiff must avoid 90% exposure to fumes, dust,

and airborne particles, and is able to perform simple repetitive tasks, including a 1/6 of an eight hour day limitation on independent judgment, discretion, and change in work process, with no interaction with the general public. (Tr. at 17).

In making his RFC finding, the ALJ considered all of the symptoms reported by Plaintiff and the extent to which the symptoms can be accepted as consistent with the medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 96-7p. The ALJ also considered medical opinion evidence in accordance with 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. The medical record provided substantial evidence for the ALJ to find Plaintiff as not disabled.

Plaintiff suffered a shotgun wound to the face in 1995. (Tr. at 353). Following that injury, Plaintiff had a bone graft operation for his jaw by collecting bone from his leg. Id. Plaintiff had a total of eight or nine operations for his face injury. (Tr. at 18, 353). Plaintiff claims that "due to [the shotgun wound, his] whole life changed mentally . . . ." (Tr. at 355).

From April 2000 through October 2001, Plaintiff was treated at Urban Family Practice by Dr. Raul Vasquez for shortness or breath, chest pain, hypertension, asthma and depression, among other things. (Tr. at 288-311). Dr. Vasquez's physical examinations from February 2002 through August 2004 reveal various findings,

including decreased range of motion in the extremities in February 2002 and August 2004 (Tr. at 313, 339). In October 2004, Dr. Vasquez determined that Plaintiff had fairly controlled depression and controlled anxiety. (Tr. at 255-56). On March 3 and April 1, 2005, Dr. Vasquez reported that Plaintiff had a full range of extremities and stable hypertension. (Tr. at 263, 265). Plaintiff's depression was described as "stable" on August 4, 2005. (Tr. at 225). On September 6, 2005, Plaintiff's depression had improved and was again considered "stable." (Tr. at 231, 235). On October 6, 2005, Plaintiff's depression had improved further. (Tr. at 240). On December 7, 2005, Plaintiff's depression continued to be "stable." (Tr. at 249). On January 6, 2006, Plaintiff's hypertension improved and his depression worsened. (Tr. at 253-54).

In October 2005, Plaintiff underwent an initial assessment conducted by a social worker at Lake Shore Behavioral Health (Tr. at 285). Plaintiff was diagnosed with Post traumatic stress disorder ("PTSD") and alcohol dependence. (Tr. at 286). Plaintiff's global assessment of functioning ("GAF") was 56. (Tr. at 285).[2] On October 28, 2005, Plaintiff reported staying in bed for six days

---

[2]GAF is a psychological functioning rating. A rating from 51-60 indicates moderate symptoms (e.g., flat affect, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. A rating of 61 to 70 indicates mild symptoms (e.g., depressed mood) or some difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R) 34 (4th ed., text revision, 2000).

with depression. (Tr. at 116). On December 8, 2005, Psychiatrist Dr. Jeffrey Kashin assessed Plaintiff's GAF at 62. (Tr. at 283). In a mental health assessment on December 23, 2005, social worker Elizabeth Woike noted that Plaintiff's thought was clear, logical, and organized; he denied having hallucinations, and denied lethality to himself or others. (Tr. at 280). In January 2006, Plaintiff reported drinking with a friend. (Tr. at 119). On February 17, 2006, Plaintiff's depression increased due to drinking and having his money stolen. (Tr. at 120). On April 6, 2006, Dr. Kashin diagnosed Plaintiff with major depressive disorder and alcohol abuse, and assessed Plaintiff's GAF at 62. (Tr. at 164, 166). Dr. Kashin stated that Plaintiff could interact with others appropriately on an occasional basis. (Tr. at 167).

On March 27, 2008, Ms. Woike and Dr. Kashin wrote a letter stating that Plaintiff could not be recommended for competitive employment and could not keep a normal work schedule or meet production demands without decompensation. (Tr. at 93). On April 3, 2008, Dr. Kashin opined in a medical source statement that Plaintiff had mild limitations in carrying out simple instructions, moderate limitations in making judgments on simple work-related decisions, moderate limitations in understanding, remembering, and carrying out complex instructions, and a marked limitation in making complex work-related decisions. (Tr. at 94). Plaintiff

further had a marked limitation in his ability to respond appropriately to usual work situations. (Tr. at 95).

Dr. Fenwei Meng, a consultative examiner, performed a internal medical examination on Plaintiff on March 14, 2006. (Tr. at 196-99). Dr. Meng reported no limitations in Plaintiff's upper extremeties with dexterity, no remarkable spinal limitations, and mild limitations for standing, walking, and running up or down stairs due to his bone graft surgery. (Tr. at 199).

Dr. Thomas Dickinson performed a consultative psychiatric examination on Plaintiff on the same date. (Tr. 200-07). In addition to finding that Plaintiff's eye contact was appropriate, Dr. Dickinson also found that Plaintiff had adequate expressive and receptive language skills, fluent speech, appropriate affect, and clear sensorium. (Tr. at 203). Dr. Dickinson assessed Plaintiff's cognitive functioning as low-average, his insight as fair, and his judgment as poor. (Tr. at 204). Plaintiff's overall functioning was low-average, according to Dr. Dickinson. Id. Dr. Dickinson offered the following:

> "[Plaintiff] can follow and understand simple job directions and perform tasks of repetitious type with mild supervision. He seems able to maintain attention and concentration for job assignments and make basic job decisions . . . [Plaintiff] would have some troubles with stress situations but seems able to deal adequately with coworkers, supervisors, and customers in routine and familiar work settings."

(Tr. at 205). Dr. Dickinson diagnosed Plaintiff with dysthymic disorder, PTSD, and alcohol dependency in brief remission. (Tr. at

11

206). He further opined that Plaintiff's prognosis was fair with continued medication and counseling. Id. Dr. Dickinson recommended continued counseling and psychiatric supervision, along with a referral to vocational rehabilitation when Plaintiff was more stable. Id.

A State agency physician completed a psychiatric review technique form (PRTF) and a mental residual functional capacity assessment (MRFC) on April 20, 2006. (Tr. 178-95). On the PRTF, the doctor determined that Plaintiff's impairments did not meet the criteria under Listing sections 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). (Tr. at 178, 181, 186). The doctor further found a "moderate limitation in completing a normal workday and workweek without interruptions from psychologically based symptoms . . . ." (Tr. at 193).

On Plaintiff's May 30, 2006 disability report, he stated that depression caused him to stay in bed about once or twice a month, and that his right leg pain impaired his ability to do housework and prevented bike riding. (Tr. at 64). At the administrative hearing on April 18, 2008, Plaintiff testified that he avoided crowds due to his anxiety. (Tr. at 357). Plaintiff also reported feeling more depressed since he stopped drinking. (Tr. at 359-60, 368). Plaintiff further testified that he did custodial work at a school in 2005, but quit after having a panic attack. (Tr. at 372-73).

At the hearing, Dr. Timothy Janikowski, vocational expert ("VE"), testified regarding a hypothetical individual of the same age, education, and work history as Plaintiff. (Tr. at 375). The VE included all of the above-mentioned limitations that the ALJ worked into his RFC assessment. Id. The VE testified that this hypothetical individual was able to work as a packing line worker, a job of which there were roughly 900 in the region and 199,000 in the national economy. (Tr. at 376). The VE also suggested that this hypothetical individual could work as an inspector, a job of which there were approximately 700 regionally and 240,000 nationally. Id. Finally, the individual could find work as a folding machine tender, a job of which there were 330 locally and 78,000 nationally. Id. The VE further testified that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 377).

*B. The ALJ gave proper weight to Dr. Kashin's opinion when evaluating Plaintiff's RFC.*

Plaintiff claims that the ALJ did not assign appropriate weight to the opinions of Plaintiff's treating psychiatrist, Dr. Kashin. Pl. Mem. at 14. In the RFC determination, the ALJ gave Dr. Kashin's opinion "little weight." (Tr. at 20). Ultimately, Plaintiff argues that the ALJ's determination of a light RFC, insofar as it is contrary to Dr. Kashin's statement that "[Plaintiff] would not be able to tolerate any stress, keep normal work [schedules] or meet any production demands without

compensation," is inconsistent with the treating physician rule, and therefore is legal error. (Tr. at 92). The Court is unpersuaded by this argument.

The treating physician rule provides that

> "a treating physician's opinion on the subject of medical disability, i.e. diagnosis and nature and degree of impairment, is (i) binding on the fact-finder unless contradicted by substantial evidence, and (ii) entitled to some extra weight . . . although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary, remains the responsibility of the fact-finder."

Schisler v. Heckler, 787 F.2d 76, 81 (2d Cir. 1986). The rule, generally, gives deference to the physician who has provided the primary treatment for the patient. 20 C.F.R. § 404.1527(d)(2); Green-Younger, 335 F.3d at 106.

When determining whether a treating physician's opinion should be given controlling weight, the ALJ must evaluate: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

The opinion of a treating physician may be given less than controlling weight when it is not consistent with other substantial evidence in the medical record. The ALJ properly determined that

there was substantial evidence in the record to support a light RFC for Plaintiff. 20 C.F.R. § 404.1527. Therefore, insofar as the substantial evidence in the record was inconsistent with Dr. Kashin's opinion, the ALJ was entitled to give his opinion less than controlling weight.

C. *The ALJ gave proper weight to the testimony of Dr. Timothy Janikowski, a vocational expert.*

The record contained substantial evidence regarding Plaintiff's limitations, as enumerated above. The ALJ properly determined that Plaintiff's ability to perform all, or substantially all, of the requirements of that RFC has been restricted by additional limitations. In determining whether these limitations would restrict the jobs that Plaintiff could find in the national economy, the ALJ asked Dr. Janikowski whether jobs would exist for an individual with Plaintiff's age, education, work experience, and RFC.

When questioning a VE, hypothetical questions must precisely set out every physical and mental impairment of the Plaintiff that the ALJ accepts as true and substantial. See Varley v. Sec'y of Health & Human Services, 820 F.2d 777, 779 (6th Cir. 1983). In this case, the ALJ conformed to that requirement. (Tr. at 375). The list of factors that the ALJ mentioned in the question is extensive and covers several physical and mental limitations of Plaintiff. Therefore, this Court finds that the testimony from Dr. Janikowski

took into consideration plaintiff's limitations and the ALJ gave his opinion proper weight.

## Conclusion

For the reasons set forth herein, this Court finds that the Commissioner's decision to deny Plaintiff SSI benefits was supported by substantial evidence in the record. Therefore, I grant Commissioner's motion for judgment on the pleadings. The Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                              s/Michael A. Telesca
                                              MICHAEL A. TELESCA
                                      United States District Judge

DATED: June 24, 2011
       Rochester, New York